IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SMOOTHIE KING FRANCHISES, INC., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. |
| MAC SMOOTHIE, LLC, PAUL MCCULLOCH and PAULA MCCULLOCH, | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Smoothie King Franchises, Inc. ("Smoothie King") asserts the following complaint against Defendants Mac Smoothie, LLC, Paul McCulloch, and Paula McCulloch (collectively, "Defendants").

## INTRODUCTION

1. Smoothie King terminated two franchise agreements with one of its franchisees, Mac Smoothie, LLC ("Mac Smoothie"), after identifying serious operational deficiencies relating to food safety and brand standards. Mac Smoothie has recently alleged, through counsel, that Smoothie King's termination of the two franchise agreements was improper. As a result, Smoothie King seeks a declaration that its termination of the two franchise agreements was proper and effective.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Smoothie King is a Texas corporation that was originally incorporated in Louisiana in 1987 and redomesticated as a Texas corporation in 2018 with its principal place of business located at 9797 Rombauer Road, Coppell, Texas 75019.

3. Defendant Paul McCulloch resides in, and is a domiciliary of, the State of Tennessee.

4. Defendant Paula McCulloch resides in, and is a domiciliary of, the State of Tennessee.

5. Defendant Mac Smoothie is a Tennessee limited liability company. Mac Smoothie's members are Paul McCulloch and Paula McCulloch, both citizens of Tennessee for purposes of 28 U.S.C. § 1332. As a result, Mac Smoothie is a citizen of Tennessee for purposes of § 1332.

6. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The value of each of the two franchise agreements at issue exceeds the value of $75,000, exclusive of interest and costs, based upon the potential for future sales, goodwill with customers and the community, and the value of intangible assets.

7. The Court has subject matter jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 1332 and 2201.

8. Venue is proper in the Eastern District of Louisiana because the parties agreed in the franchise agreements to "irrevocably admit" to and "consent" to the jurisdiction of the Federal District Court for the Eastern District of Louisiana and agreed that any "cause of action, claim, suit or demand allegedly arising from or related to the terms of [the franchise agreements] or the relationship of the parties will be brought in" this Court.

**FACTUAL ALLEGATIONS IN SUPPORT OF DECLARATORY JUDGMENT**

**The Smoothie King System**

9. Smoothie King is a national franchisor that offers franchises for the operation of

Smoothie King Units.[1]  Since 1988, Smoothie King Units have been selling healthy, blended, fruit drinks ("smoothies") made from confidential and proprietary recipes and blending techniques developed through considerable time, effort, and expense.  Smoothie King Units also offer a wide selection of healthy snacks and high quality nutritional products.  The Smoothie King Franchise System currently consists of over 1200 Units with over 950 Units in 33 states in the United States.

10. To identify the source, origin and sponsorship of Smoothie King's facilities, products and services, Smoothie King has extensively employed, caused to be advertised, and publicized throughout the United States certain distinctive service marks and trademarks, including its principal mark "SMOOTHIE KING®" (all collectively, the "Smoothie King Marks" or "Marks").  Smoothie King has also adopted and used, and has licensed franchisees to use in the Smoothie King Units, a distinctive red color scheme in which the Smoothie King Marks are depicted.  This red color scheme is also utilized throughout Smoothie King Units including accent walls, internal and external signage, employee uniforms and other decor (collectively, the "Smoothie King Trade Dress").

11. Pursuant to the Franchise Agreement between Smoothie King and its franchisees, Smoothie King grants its franchisees a limited license and authority to use and display the Smoothie King Marks and the Smoothie King Trade Dress, but only in such manner, and at such locations and times, as are expressly authorized by Smoothie King.

12. Smoothie King has developed a comprehensive system for the establishment and operation of businesses offering nutritional drinks and general nutrition products (the "System") for all Smoothie King franchisees to protect the image of Smoothie King Units and to ensure uniform, high quality standards.  The detailed specifications and procedures of the Smoothie King

---

[1] The undefined capitalized terms used herein shall have the meanings assigned to them in the Franchise Agreements (defined below).

System are set forth in Smoothie King's confidential operations manual, other manuals and other writings issued by Smoothie King from time to time, such as quality control requirements maintained on Smoothie King's intranet (collectively, "Proprietary Materials").

13. Every Smoothie King franchisee is required by its Franchise Agreement to operate its franchise in accordance with the specifications and procedures contained in the Franchise Agreement and the Proprietary Materials. The Proprietary Materials set forth in detail the mandatory Smoothie King Unit operating standards, specifications and procedures, including rules governing areas such as food preparation and handling, cleanliness, health, sanitation, and quality and speed of service.

14. Smoothie King offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including training for various levels of personnel. This enables Smoothie King to safeguard the integrity of Smoothie King Units, the Smoothie King System, and the Smoothie King Marks.

15. Integral to Smoothie King's compliance and assistance program are periodic inspections and consultations undertaken by Smoothie King personnel specially trained to observe and advise in all areas of Unit operating procedure. Each Smoothie King Franchise Agreement confers upon Smoothie King the right to enter the Unit premises to perform this vital function.

**Defendants' Obligations under the Franchise Agreements and Guarantees**

16. Mac Smoothie is the successor-in-interest to a Franchise Agreement effective May 25, 2007 ("Franchise Agreement No. 826"), whereby Smoothie King granted Mac Smoothie's predecessor-in-interest, Mac and Moore, LLC, a franchise for the use of, among other things, Smoothie King's trade name, the Smoothie King Marks, the Smoothie King Trade Dress, the Smoothie King System, and the Proprietary Materials in the operation of a Smoothie King Unit

located at 2040 Rosa L. Parks Blvd, Nashville, TN 37228 ("Store No. 826").  A true and correct copy of Franchise Agreement No. 826 is attached as Exhibit "A".

17. On or about July 10, 2006, Smoothie King and Mac Smoothie entered into a Franchise Agreement, whereby Smoothie King granted Mac Smoothie a franchise for the use of, among other things, Smoothie King's trade name, the Smoothie King Marks, the Smoothie King Trade Dress, the Smoothie King System, and the Proprietary Materials in the operation of a Smoothie King Unit located at 1804 Twenty First Avenue South, Nashville, Tennessee.  On or about December 13, 2013, Mac Smoothie relocated the Franchised Business to 2418 West End Avenue, Nashville, TN 37203 ("Store No. 740").

18. Effective as of December 29, 2017, Smoothie King and Mac Smoothie entered into a Renewal Franchise Agreement and Addendum to Renewal Franchise Agreement with respect to Store No. 740 (collectively, "Franchise Agreement No. 740").  A true and correct copy of Franchise Agreement No. 740 is attached as Exhibit "B".

19. Paul McCulloch agreed to guarantee unconditionally to Smoothie King the payment and performance of each term, covenant, and obligation of Mac Smoothie set forth in Franchise Agreement No. 826 and Franchise Agreement No. 740 (collectively, the "Franchise Agreements").  Paula McCulloch agreed to guarantee unconditionally to Smoothie King the payment and performance of each term, covenant, and obligation of Mac Smoothie set forth in Franchise Agreement No. 740.

20. Smoothie King is recognized as a leading health and fitness smoothie franchise brand by trade publications, including *Franchise Times, QSR Magazine,* and *franchising.com*.  Smoothie King is devoted to sourcing the highest quality products and ingredients for its System.  With a mission to inspire people to live healthy and active lifestyles, and with more and more

consumers demanding menu transparency and clean, wholesome options from the brands they interact with, Smoothie King has excelled at demonstrating that kind of authenticity and unwavering commitment to guests' health and wellness needs. To this end, pursuant to Section 10.3 of the Franchise Agreements, Mac Smoothie agreed to operate Store No. 826 and Store No. 740 in strict conformity with the methods, procedures, standards and specifications as established by Smoothie King in the Franchise Agreements, the Manuals or otherwise in writing as to standards, recipes, ingredients and procedures.

21. Pursuant to Section 10.1 of the Franchise Agreements, Mac Smoothie acknowledged and agreed that abiding by every detail of the Smoothie King System was important to maintain the high and uniform operating standards in the Smoothie King System, to increase the demand for the services and products sold by all franchisees in the Smoothie King System, and to protect the reputation and goodwill of the Smoothie King Marks.

22. Pursuant to Section 10.3.3 of the Franchise Agreements, Mac Smoothie agreed to maintain Store No. 826 and Store No. 740 in good, clean, attractive and safe conditions at all times and to comply with the Manuals in operating Store No. 826 and Store No. 740.

23. Pursuant to Section 10.3.11 of the Franchise Agreements, Mac Smoothie agreed to maintain trained staff at Store No. 826 and Store No. 740, including a Manager, to ensure that employees preserve good guest relations.

24. Pursuant to Section 10.3.12, Mac Smoothie agreed to permit Smoothie King or its agents to enter into and inspect the premises of Store No. 826 and Store No. 740 during regular business hours and to cooperate fully with Smoothie King and its agents in such inspections and render such assistance as they may request. Mac Smoothie further agreed immediately upon

receipt of notice of any deficiencies detected in such inspections to take such steps as may be necessary to correct such deficiencies.

25. Pursuant to Section 10.3.17 of the Franchise Agreements, Mac Smoothie agreed not to engage or cooperate in any conduct that reflects unfavorably on the reputation of Mac Smoothie, Smoothie King, or the System or injures or is prejudicial to the goodwill associated with the Smoothie King Marks, including conduct which jeopardizes Mac Smoothie's good relations with guests.

26. To address issues surrounding the novel coronavirus disease (COVID-19) outbreak, Smoothie King began holding weekly webinar meetings with its franchisees and all store managers beginning on March 12, 2020. Each webinar had slides with relevant information. Recordings of each webinar were also available on The Blend, an intranet maintained by Smoothie King. During these meetings, Smoothie King emphasized that guests are now becoming hypersensitive to lapses in cleanliness and its number one priority is the health and safety of Smoothie King team members and guests. To that end, effective April 16, 2020, Smoothie King has required all of its team members to wear a mask or other type of covering over their noses and mouths while working at any Smoothie King location in addition to complying with all existing health and safety and operational standards.

27. The Franchise Agreements contain provisions regarding default and establishing the parties' rights and obligations in the event of a default by Mac Smoothie under the Franchise Agreements. Specifically, Sections 14.2 and 14.2.2 of the Franchise Agreements provide that franchisee shall be in default, and Smoothie King may at its option terminate the Franchise Agreements, effective twenty-four (24) hours after receipt of written Notice of Termination from Smoothie King, if franchisee violates any law, regulation, order or System standard or

specification relating to health, sanitation or safety, and franchisee does not cure such default within the twenty-four (24) hour period. Similarly, Sections 14.3 and 14.3.2 of the Franchise Agreements provide that franchisee shall be in default, and Smoothie King may at its option terminate the Franchise Agreements, effective ten (10) days after receipt of written Notice of Termination from Smoothie King, if franchisee fails to observe or maintain any of the standards or procedures prescribed by Smoothie King in the Franchise Agreements, the Manuals, or otherwise in writing, and franchisee does not cure such default within the ten (10) day period.

28. As set forth below, Mac Smoothie breached the Franchise Agreements by, among other things, failing to operate Store No. 826 and Store No. 740 in compliance with the Smoothie King System requirements as set forth in the Franchise Agreements, Manuals and other writings.

### **Default and Termination of Store No. 826**

29. Mac Smoothie has had a history of serious operational issues in connection with Store No. 826, including receiving a Notice of Operations Default dated November 22, 2019. That default issued as a result of health and safety deficiencies that were observed by Smoothie King's representative during an inspection and visit of Store No. 826 on November 22, 2019, including team members not washing their hands and pans, containers, and portioning devices not being washed, rinsed and sanitized per Smoothie King's specifications. Store No. 826 has also received numerous negative guest reviews.

30. During an inspection and visit of Store No. 826 by Smoothie King's representative on July 14, 2020, severe operational deficiencies were revealed relating to health and safety standards, including the presence of mold on a water spigot, team members not washing their hands, and pans, containers, and portioning devices not being washed, rinsed and sanitized per

Smoothie King's specifications. These operational deficiencies resulted in Store No. 826 receiving an overall score of 0.00% for food safety and an overall rating of "Fail."

31. A follow-up inspection and visit of Store No. 826 by Smoothie King's representative on July 17, 2020 revealed further severe operational deficiencies, including team members not washing their hands, not wearing gloves, and not wearing masks. These operational deficiencies again resulted in Store No. 826 receiving an overall score of 0.00% for food safety and an overall rating of "Fail."

32. On July 17, 2020, Smoothie King provided Mac Smoothie with a Notice of Operations Default regarding Store No. 826 ("Notice of Default No. 826"). "Considering the serious deficiencies, including several health and safety violations persisting at [Store No. 826]," Smoothie King notified Mac Smoothie that "the items highlighted in red contained in Exhibit A and Exhibit B require your immediate attention." The items highlighted in red include "Ice scoop is not properly stored in ice bin caddy, mounted to drain – covered to keep clean"; "team members were touching their phones, POS and making smoothies never once washing their hands"; "they were not wearing gloves which is mandatory with Covid"; and "they were also not wearing masks."

33. Pursuant to Section 14.2 of Franchise Agreement No. 826, Smoothie King notified Mac Smoothie in Notice of Default No. 826 that (i) Mac Smoothie is in default due to non-compliance with the standards prescribed in Franchise Agreement No. 826 and (ii) Mac Smoothie must cure the food and safety violations highlighted in red contained in Exhibit A and Exhibit B within twenty-four (24) hours after receipt of the Notice of Default No. 826. A true and correct copy of Notice of Default No. 826 is attached as Exhibit "C".

34. A follow-up inspection and visit of Store No. 826 by Smoothie King's representative on August 5, 2020 revealed further severe operational deficiencies, including the presence of mold on a water spigot and evidence of pests. These operational deficiencies again resulted in Store No. 826 receiving an overall rating of "Fail" for food safety.

35. On August 25, 2020, Smoothie King provided Mac Smoothie with a Notice of Termination and Cease and Desist regarding Store No. 826 ("Notice of Termination No. 826"). Smoothie King advised that Notice of Default No. 826 provided Mac Smoothie with the opportunity to cure the defaults identified therein within the prescribed cure period as set forth in Franchise Agreement No. 826. However, despite this opportunity to cure, Store No. 826 failed the post-cure period Food Safety audit performed on August 5, 2020.

36. Consequently, in Notice of Termination No. 826, Smoothie King notified Mac Smoothie that "pursuant to Section 14.2 of the Franchise Agreement, this [Notice of Termination No. 826] serves as notice of the termination of all rights you have pursuant to the Franchise Agreement effective as of the date of the receipt of this [Notice of Termination No. 826]." A true and correct copy of Notice of Termination No. 826 is attached as Exhibit "D".

37. By correspondence dated September 18, 2020, Mac Smoothie, through counsel, stated that Smoothie King did not properly terminate Franchise Agreement No. 826 because, among other things, the operations defaults identified by Smoothie King "were the direct result of Coronavirus and/or Coronavirus-related restrictions."

**Default and Termination of Store No. 740**

38. Mac Smoothie has had a history of serious operational issues in connection with Store No. 740, including receiving Notices of Operations Default dated September 23, 2019, October 30, 2019, and November 22, 2019. Those defaults issued as a result of health and safety

deficiencies that were observed by Smoothie King's representative during an inspection and visit of Store No. 740 on September 20, 2019, October 29, 2019, and November 20, 2019, including the presence of mold on the ice machine, team members not washing their hands, products not being dated properly, and pans, containers, and portioning devices not being washed, rinsed and sanitized per Smoothie King's specifications.

39. During an inspection and visit of Store No. 740 by Smoothie King's representative on July 30, 2020, severe operational deficiencies were revealed relating to health and safety standards, including products not being dated properly and bowls not being washed, rinsed, and sanitized per Smoothie King's specifications. These operational deficiencies resulted in Store No. 740 receiving an overall score of 0.00% for food safety and an overall rating of "Fail."

40. On August 25, 2020, Smoothie King provided Mac Smoothie with a Notice of Operations Default and Termination Absent Cure regarding Store No. 740 ("Notice of Default No. 740"). Smoothie King reminded Mac Smoothie that Smoothie King had previously advised Mac Smoothie on numerous occasions of its failure to operate and maintain Store No. 740 in accordance with Smoothie King's standards. Despite these communications, Store No. 740 continued to fail to meet Smoothie King's standards, as demonstrated by the Food Safety audit performed at Store No. 740 on July 30, 2020.

41. Pursuant to Section 14.3 of the Franchise Agreement No. 740, Smoothie King notified Mac Smoothie in Notice of Default No. 740 that (i) Mac Smoothie is in default due to non-compliance with the standards prescribed in Franchise Agreement No. 740 and (ii) Mac Smoothie must cure this default, including all items failed on the July 30, 2020 Food Safety audit attached to Notice of Default No. 740, within ten (10) days after receipt of Notice of Default No. 740. A true and correct copy of Notice of Default No. 740 is attached as Exhibit "E".

42. A follow-up inspection and visit of Store No. 740 by Smoothie King's representative on September 11, 2020 revealed further severe operational deficiencies, including bowls not being washed, rinsed, and sanitized per Smoothie King's specifications and poor quality of the smoothies made for customers. These operational deficiencies resulted in Store No. 740 again receiving an overall rating of "Fail" for food safety. A true and correct copy of the completed Prime and Food Safety audits is attached as Exhibit "F".

43. On September 16, 2020, Smoothie King provided Mac Smoothie with a Notice of Termination and Grant of Interim Authorized Use Period to Complete an Authorized Sale regarding Store No. 740 ("Notice of Termination No. 740"). Smoothie King advised that Notice of Default No. 740 provided Mac Smoothie with the opportunity to cure the defaults identified therein within the prescribed cure period as set forth in Franchise Agreement No. 740. However, despite this opportunity to cure, Store No. 740 failed the post-cure period Prime and Food Safety audits performed on September 11, 2020.

44. Consequently, in Notice of Termination No. 740, Smoothie King notified Mac Smoothie that pursuant to the terms of the Notice of Default No. 740, "your Franchise Agreement for this Store is hereby terminated effective at 11:59 p.m. Wednesday, September 16, 2020." A true and correct copy of the Notice of Termination No. 740 is attached as Exhibit "G".

45. By correspondence dated September 18, 2020, Mac Smoothie, through counsel, stated that Smoothie King did not properly terminate Franchise Agreement No. 740 because, among other things, the operations defaults identified by Smoothie King "were the direct result of Coronavirus and/or Coronavirus-related restrictions."

## COUNT I FOR DECLARATORY JUDGMENT – STORE NO. 826

46. Smoothie King incorporates the allegations contained in paragraphs 1 through 45 above as though fully set forth herein.

47. Smoothie King performed its contractual obligations under Franchise Agreement No. 826.

48. Section 10.3 of Franchise Agreement No. 826 requires Mac Smoothie to operate Store No. 826 in strict conformity with the methods, procedures, standards, and specifications prescribed from time to time by Smoothie King.

49. Mac Smoothie failed to comply with Section 10.3 of Franchise Agreement No. 826.

50. In Notice of Default No. 826, Smoothie King provided formal notice, pursuant to Section 14.2 of Franchise Agreement No. 826, that Franchise Agreement No. 826 had been placed in default due to Mac Smoothie's failure to comply with Smoothie King's standards.

51. Smoothie King provided Mac Smoothie an opportunity to cure the defaults identified in Notice of Default No. 826 within the prescribed cure period as set forth in Franchise Agreement No. 826.

52. Despite this opportunity to cure, Mac Smoothie and Paul McCulloch failed to cure timely all of the defaults identified in Notice of Default No. 826.

53. In Notice of Termination No. 826, Smoothie King provided formal notice, pursuant to Section 14.2 of Franchise Agreement No. 826, of the termination of all rights Mac Smoothie has pursuant to Franchise Agreement No. 826 effective as of the date of receipt of Notice of Termination No. 826.

54. On September 18, 2020, Mac Smoothie, through counsel, alleged that Smoothie King's termination of Franchise Agreement No. 826 was improper.

55. As a result, there is an actual and justiciable controversy between Smoothie King and Mac Smoothie and Paul McCulloch as to whether Smoothie King properly terminated Franchise Agreement No. 826.

56. WHEREFORE, Smoothie King requests a declaration that Smoothie King properly terminated Franchise Agreement No. 826.

## COUNT II FOR DECLARATORY JUDGMENT – STORE NO. 740

57. Smoothie King incorporates the allegations contained in paragraphs 1 through 45 above as though fully set forth herein.

58. Smoothie King performed its contractual obligations under Franchise Agreement No. 740.

59. Section 10.3 of Franchise Agreement No. 740 requires Mac Smoothie to operate Store No. 740 in strict conformity with the methods, procedures, standards, and specifications prescribed from time to time by Smoothie King.

60. Mac Smoothie failed to comply with Section 10.3 of Franchise Agreement No. 740.

61. In Notice of Default No. 740, Smoothie King provided formal notice, pursuant to Section 14.3 of Franchise Agreement No. 740, that Franchise Agreement No. 740 had been placed in default due to Mac Smoothie's failure to comply with Smoothie King's standards.

62. Smoothie King provided Mac Smoothie an opportunity to cure the defaults identified in Notice of Default No. 740 within the prescribed cure period as set forth in Franchise Agreement No. 740.

63. Despite this opportunity to cure, Defendants failed to cure timely all of the defaults identified in Notice of Default No. 740.

64. In Notice of Termination No. 740, Smoothie King provided formal notice, pursuant to Section 14.3 of Franchise Agreement No. 740, of the termination of all rights Mac Smoothie has pursuant to Franchise Agreement No. 740 effective as of the date of receipt of Notice of Termination No. 740.

65. On September 18, 2020, Mac Smoothie, through counsel, alleged that Smoothie King's termination of Franchise Agreement No. 740 was improper.

66. As a result, there is an actual and justiciable controversy between Smoothie King and Defendants as to whether Smoothie King properly terminated Franchise Agreement No. 740.

67. WHEREFORE, Smoothie King requests a declaration that it properly terminated Franchise Agreement No. 740.

## COUNT III FOR ATTORNEYS' FEES

68. Smoothie King incorporates the allegations contained in paragraphs 1 through 67 above as though fully set forth herein.

69. Pursuant to Section 25.3 of the Franchise Agreements, Defendants are required to pay all of Smoothie King's costs and expenses, including its reasonable attorneys' fees, in the event Smoothie King prevails in this action.

70. Smoothie King has incurred and continues to incur reasonable and necessary attorneys' fees together with court costs and litigation expenses. Smoothie King seeks its attorneys' fees, together with court costs.

## PRAYER FOR RELIEF

WHEREFORE, Smoothie King respectfully prays

1. That the Court enter a declaratory judgment that Smoothie King properly terminated Franchise Agreement No. 826;

2. That the Court enter a declaratory judgment that Smoothie King properly terminated Franchise Agreement No. 740;

3. That the costs of this action, including a reasonable attorneys' fee for Smoothie King's attorneys, be taxed against Defendants; and,

4. That the Court award all such other and further relief that this Court deems just and proper.

Date: September 22, 2020

Respectfully submitted,

s/ Walter F. Metzinger
Michael Q. Walshe, Jr., La. Bar No. 23968
Walter F. Metzinger, III, La. Bar. No. 37799
Stone Pigman Walther Wittmann, L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana, 70112
E-mail: mwalshe@stonepigman.com;
fmetzinger@stonepigman.com

Christopher P. Bussert
*Pro Hac Vice Application Forthcoming*
John P. Jett
*Pro Hac Vice Application Forthcoming*
Joe P. Reynolds
*Pro Hac Vice Application Forthcoming*
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
E-mail: cbussert@kilpatricktownsend.com;
jjett@kilpatricktownsend.com;
jreynolds@kilpatricktownsend.com

*Attorneys for Plaintiff*
*Smoothie King Franchises, Inc.*